IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JERRY JELLIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:15-cv-630-NJR-DGW |
| | ) | |
| RICHARD HARRINGTON, JOHN TOURVILLE, RYAN DAVIS, LARRY HALE, DONALD LINDENBERG, TIMOTHY VEATH, JASON HART, AIMEE LANG, and ROBERT SHEARING, | ) ) ) ) ) ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge Nancy J. Rosenstengel pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on the question of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 28 U.S.C. § 1997e(a). For the reasons set forth below, it is **RECOMMENDED** that the Motion for Summary Judgment on Exhaustion filed by Defendant Robert Shearing (Doc. 57) be **DENIED** and that the Court adopt the following findings of fact and conclusions of law.

### INTRODUCTION

Plaintiff, an inmate currently housed at the Lawrence Correctional Center, filed a Complaint on June 8, 2015 (Doc. 1) alleging that his civil rights were violated while he was incarcerated at the Menard Correctional Center. Plaintiff claims that on August 27, 2013, he was beaten by Defendants Hale and Lindenberg (both Correctional Officers) because they believed

that he had "disrespected" the Warden, Richard Harrington. After the attack, Plaintiff sought medical care from Defendant Lang, a medical technician, who provided some pain medication. However, he was not slated to see Dr. Shearing until September 20, 2013, an appointment that he subsequently missed. Plaintiff was transferred to Stateville Correctional Center on a Court writ on September 24, 2013. When he returned to Menard on October 9, 2013, his requests for additional medical care were ignored. Plaintiff further claims that correctional officers conspired to "cover the beating up" and falsely wrote out a disciplinary ticket that imposed three months of segregation, among other things. Plaintiff claims he did not get any further medical attention until he was transferred to Stateville CC on June 11, 2014.

Defendant Shearing filed a timely Motion for Summary Judgment on December 21, 2015 (Doc. 57). Plaintiff responded on January 8, 2016 (Docs. 62 and 63) to which Defendant Shearing replied on January 14, 2016 (Doc. 64). A hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), was held on July 7, 2016 (Doc. 85). As indicated at the hearing, Defendant filed an employee time sheet for Monica Nippe, Plaintiff's counselor at the time (Doc. 88-1).

### FINDINGS OF FACT

Plaintiff states that he submitted a grievance, regarding Dr. Shearing, on November 17, 2013 to his counselor, Monica Nippe, through institutional mail (by placing it in his door) (Doc. 63-1, p. 2). The grievance is dated October 20, 2013 (Doc. 58-2, p. 57). At the hearing Plaintiff testified that October 20, 2013 is the date of the incident and that he actually signed and submitted the grievance on November 17, 2013, the date near his signature (*Id*). The grievance itself states that Plaintiff was not taken for a doctor's appointment on September 20, 2013, that he had requested a doctor's attention 4 additional times, by writing to Dr. Shearing, without

success,[1] and that he has been in pain for 81 days (*Id*. 58). Plaintiff requests medical treatment, from a doctor (*Id*. 57).

Plaintiff further states that when he spoke to counselor Nippe, on November 19, 2013 about the grievance, she indicated that she had forwarded it to healthcare for a response and that she would forward it to the grievance officer once she got a response (Doc. 63-1, p. 2). On December 1, 2013, Plaintiff sent a letter to counselor Nippe inquiring after his grievance but never received a response (*Id*. p. 3; Doc. 58-2, p. 40). He also spoke to another counselor, Grapperhaus, on December 19, 2013 and January 28, 2014 and wrote to a Ms. Carter on January 29, 2014 regarding his grievances (*Id*.; Doc. 58-2, p. 42). While he doesn't explicitly state in his filings, Plaintiff apparently did not receive an answer to his grievance. At the hearing, Plaintiff testified that he did not receive a response to his grievance or the many letters that he penned.

Plaintiff was transferred to Lawrence CC on June 11, 2014. The grievance and each of the letters Plaintiff wrote to his counselors, Dr. Shearing, and others at the prison are date stamped received by the ARB on October 29, 2014.[2]

Plaintiff's Cumulative Counseling Summary during the relevant time period reveals that Plaintiff spoke to Counselor Nippe on October 12, 2013 and November 16, 2013; however, there is no indication that he requested medical care on those dates (Doc. 58-3, p. 4). In his affidavit Plaintiff states that he did not speak to Counselor Nippe on those dates because they are Saturdays and she did not work on those days (Doc. 63-1, pp. 3-4). Counselor Nippe's

---

[1] These letters are dated October 11, 2013, October 20, 2013, October 30, 2013, and November 12, 2013 (Doc. 58-2, pp. 53-55).

[2] Plaintiff also submitted to the ARB grievances that he wrote about the August 27, 2013 incident and the aftermath and another grievance indicating that he had not received a response to any of his grievances (Doc. 58-1, pp. 33-36). The ARB stated that, according to the grievance officer, only one grievance was submitted in 2013 by Plaintiff (*Id*. 33).

timesheet, however, reveals that she was working on those days (Doc. 88-1). The Cumulative Counseling Summary does not reveal that Plaintiff spoke to his subsequent counselor, Grapperhaus, about his grievances and medical care (Doc. 58-3, pp. 3-4). However, on March 31, 2014, his next counselor, Shellie Cartwright indicates "discussed grievances that he claimed he submitted in while in segregation but now is unable to be located" (*Id*. 3).

The Court finds Plaintiff credible in his assertion that he submitted his grievance regarding Dr. Shearing on November 17, 2013 by placing it in his cell bars. The Court further finds Plaintiff credible in his assertion that he did not receive a response.

### CONCLUSIONS OF LAW

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FEDERAL RULE OF CIVIL PROCEDURE 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show

what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

> The Prison Litigation Reform Act provides:
>
> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Perez v. Wis. Dept. of Corr.*,182 F.3d 532, 534-535 (7th Cir. 1999) (stating that §1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983). Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006). The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006). This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90, (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). In finding that the PLRA requires proper exhaustion, the Supreme Court agreed with the Seventh Circuit's interpretation of the statute as stated in *Pozo*, which required an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. In *Pavey*, the Seventh Circuit instructed District Courts to conduct a hearing to determine whether a Plaintiff has exhausted his remedies. *Id.* 544 F.3d at 742. If a Plaintiff has exhausted his remedies, the case will proceed on the merits. If, however, a Plaintiff has not exhausted, the Court may either allow Plaintiff to exhaust or terminate the matter.

Under the procedures set forth in the Illinois Administrative Code, an inmate must first attempt to resolve a complaint informally with his Counselor. ILL. ADMIN. CODE TIT. 20, § 504.810(a). If the complaint is not resolved, the inmate may file a grievance within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. *Id.* §504.810(b). The grievance officer is required to advise the Chief Administrative Officer ("CAO" – usually the Warden) at the facility in writing of the findings on the grievance. *Id.* §504.830(d). The CAO shall advise the inmate of the decision on the grievance within two months of it having been filed. *Id.* § 504.830(d). An inmate may appeal the decision of the CAO in writing within 30 days to the Administrative Review Board for a final decision. *Id.*, § 504.850(a). *See also Dole v. Chandler*, 438 F.3d 804, 806-07 (7th Cir. 2006). An inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO. If the CAO determines that there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance shall be handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender indicating what action shall be taken. *Id.* §504.840.

An inmate is required to exhaust only those administrative remedies available to him. *See* 42 U.S.C. § 1997e(a). The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005). The availability of a remedy does not depend on the rules and regulations as they appear on paper, but on "whether the paper process was in reality open for the prisoner to pursue." *Wilder v. Sutton*, 310 Fed.Appx. 10, 13 (7th Cir. 2009). If further remedies are unavailable to the prisoner, he is deemed to have exhausted. *Id.* Prisoners are required only to provide notice to

"responsible persons" about the complained-of conditions. *See Wilder*, 310 Fed.Appx. at 15 (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). An inmate forfeits the grievance process, however, when he causes the unavailability of a remedy by not filing or appealing a grievance. *See Kaba*, 458 F.3d at 684.

By failing to respond to Plaintiff's grievance, the grievance process was rendered unavailable and Plaintiff is deemed to have exhausted his administrative remedies. Plaintiff submitted his grievance by placing it in his cell door. He knew that his counselor received it because he spoke to her. He further knew that she would forward it to the grievance officer because she stated as much. Plaintiff also inquired after his grievances in March 2015 with a subsequent counselor, something that the regulations do not require him to do. Plaintiff appears to be familiar with the grievance process and has an understanding of what is required of him to properly submit grievances. The grievance also was sufficient to notify Dr. Shearing of the claims against him and comports with the allegations made in the Complaint.

Defendant argues that Plaintiff is not credible because he did not inquire about medical care with his counselor during face-to-face meetings and because he was obviously mistaken about not having spoken to his counselor on October 12, 2013 and November 16, 2013. First, there is no evidence that the Cumulative Counseling Summary is an accurate and complete record of everything that a counselor discusses with an inmate. Second, Plaintiff may well have believed that by writing to Dr. Shearing and seeking medical care, he was using the best avenue to acquire said care. There is nothing in the regulations that require an inmate to either inquire after properly submitted grievances or to immediately bring every concern to the attention of his counselor. And, the grievance itself is a communication to his counselor that he requires medical care. Finally, Plaintiff did inquire after his grievances, in March, 2014, well before he submitted

them to the ARB and well before he filed this lawsuit. That Plaintiff may have been mistaken about when he spoke to his counselor does not render his entire testimony and affidavit non credible. Plaintiff appeared sincere in his statements of what occurred.

Defendant also argues that Plaintiff should have submitted his grievance to the grievance officer once he did not receive a response from his counselor. There is no evidence, however, of how Plaintiff was meant to do this or if he was required to do more than what he did. As Plaintiff indicated, he filled out a grievance form and placed it in his door. It was picked up and Counselor Nippe told him that she would forward it to healthcare and then to the grievance officer once she received a response. As Plaintiff points out, the manual that he received while incarcerated at Menard CC indicates that a grievance must be "filed" but does not state how an inmate must "file" the grievance. (Doc. 63-2, p. 5). There is no evidence that Plaintiff's attempt to submit his grievance for review, by the grievance officer, was done incorrectly. Indeed, this Court notes from other cases that an inmate's grievances, whether sent to the counselor or the grievance officer, are submitted in the same manner: either by placing it in the grievance box or by placing it in the cell door for pick-up. Defendant's arguments, then, are without merit.

**RECOMMENDATIONS**

For the foregoing reasons, it is **RECOMMENDED** that the Motion for Summary Judgment on Exhaustion filed by Defendant Robert Shearing (Doc. 57) be **DENIED** and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objection thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: July 22, 2016**

**DONALD G. WILKERSON**
**United States Magistrate Judge**