IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JERRY JELLIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:15-CV-630-NJR-DGW |
| | ) |
| RICHARD HARRINGTON, JOHN TOURVILLE, RYAN DAVIS, LARRY HALE, DONALD LINDENBERG, TIMOTHY VEATH, JASON HART, AIMEE LANG, and ROBERT SHEARING, | ) ) ) ) ) |
| | ) |
| Defendants. | ) ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter is before the Court on the Report and Recommendation of United States Magistrate Judge Donald G. Wilkerson (Doc. 89), which recommends that the Motion for Summary Judgment on the Issue of Exhaustion filed by Defendant Dr. Robert Shearing (Doc. 57) be denied. The Report and Recommendation was entered on July 22, 2016. Defendant Shearing filed a timely objection[1] (Doc. 92).

## BACKGROUND

This matter stems from Plaintiff's allegation in his Complaint (Doc. 1) that Defendant Shearing was deliberately indifferent to his medical needs in violation of Plaintiff's Eighth Amendment rights. Specifically, Plaintiff alleges that on August 27, 2013, while he was incarcerated at Menard Correctional Center, Defendants Larry Hale and Donald Lindenberg

---

[1] Plaintiff also filed an objection, but only to note an apparent mistake in the Report and Recommendation regarding the facility to which he was transferred. Plaintiff indicates he was transferred to Lawrence Correctional Center on June 11, 2014, not to Stateville Correctional Center.

attacked and beat Plaintiff because the correctional officers believed he had "disrespected" the Warden. According to the Complaint, Plaintiff sought medical care from Defendant Shearing for his alleged injuries. Plaintiff was scheduled to see Defendant Shearing on September 20, 2013, but the appointment was canceled because the doctor ran out of time to see him. Plaintiff then was transferred to another correctional center on a court writ from September 24, 2013, to October 9, 2013. Upon his return to Menard Correctional Center, Plaintiff alleges he wrote four separate letters to Defendant Shearing in an attempt to get medical care for his injuries, all of which went unanswered.

On November 17, 2013, Plaintiff submitted a grievance related to Defendant Shearing's failure to provide medical care to his grievance counselor, Monica Nippe ("Counselor Nippe")[2] (Doc. 63-1, p. 2). Plaintiff sent the grievance through institutional mail by placing the grievance in a sealed, white envelope with Counselor Nippe's name on the front and placing it in his cell door for mail pick-up. He alleges in the Complaint that while Counselor Nippe was making her rounds on November 19, 2013, he asked if she received his grievance related to Defendant Shearing. Counselor Nippe told Defendant she sent the grievance to health care for a response. Plaintiff also alleges he subsequently spoke with his new counselor, Mr. Grapperhaus, and also wrote to a Ms. Carter regarding his November 17 grievance. Despite his follow-up conversations and correspondence, Plaintiff never received an answer to his grievance.

On October 29, 2014, the Administrative Review Board ("ARB") received Plaintiff's grievance regarding Defendant Shearing along with several other grievances Plaintiff submitted regarding the incident on August 27, 2013. The ARB also received an additional

---

[2] Although the grievance is dated October 20, 2013, Plaintiff testified at the *Pavey* hearing that October 20, 2013, was the date of the incident and that he actually signed and submitted the grievance on November 17, 2013, the date next to his signature on the grievance.

grievance from Plaintiff dated October 26, 2014, complaining that he had not received an answer to his previous grievances. The ARB responded to the October 26 grievance noting that the grievance office only had one grievance on file from 2013, and it related to property, not to Defendant Shearing or the August 27, 2013 incident.

On June 8, 2015, Plaintiff filed a Complaint asserting, among other claims, that Defendant Shearing was deliberately indifferent to his serious medical needs and severe pain caused by the alleged beating. On December 21, 2015, Defendant Shearing filed a Motion for Summary Judgment for Plaintiff's Failure to Exhaust His Administrative Remedies (Doc. 57). Plaintiff timely filed a response (Doc. 62) on January 8, 2016, and Defendant Dr. Shearing filed a reply on January 14, 2016 (Doc. 64). Pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), Magistrate Judge Wilkerson held an evidentiary hearing on July 7, 2016 (Doc. 85). Counselor Nippe was expected to testify at the hearing via videoconference; however, technical difficulties prevented her from appearing.

### CONCLUSIONS OF THE REPORT AND RECOMMENDATION

On July 22, 2016, Magistrate Judge Wilkerson issued the Report and Recommendation currently before the Court (Doc. 89). Based upon the evidence presented, Magistrate Judge Wilkerson found Plaintiff credible regarding his assertion that on November 17, 2013, he placed his grievance related to Defendant Shearing in his cell door for delivery to Counselor Nippe via institutional mail. Magistrate Judge Wilkerson further found that the grievance was sufficient to notify Defendant Shearing of the claims against him and that Plaintiff "knew that his counselor received [the grievance] because he spoke to her. He further knew that she would forward it to the grievance officer because she stated as much" (Doc. 89, p. 7). Thus, by failing to respond to Plaintiff's grievance, the grievance

process was rendered unavailable, and Plaintiff is deemed to have exhausted his administrative remedies.

Magistrate Judge Wilkerson addressed Defendant's argument that Plaintiff is not credible because, contrary to Plaintiff's assertions, his Cumulative Counseling Summary is devoid of any complaint to Counselor Nippe or Counselor Grapperhaus regarding the lack of medical care by Defendant Shearing. Plaintiff's Cumulative Counseling Summary reveals Plaintiff spoke to Counselor Nippe on October 12, 2013, and November 16, 2013, but there is no indication in the Cumulative Counseling Summary that Plaintiff discussed Defendant Shearing on those dates. In fact, Plaintiff denied that he even spoke with Counselor Nippe on those dates, claiming that Counselor Nippe does not work on Saturdays—a claim that was contradicted by Counselor Nippe's timesheets. Magistrate Judge Wilkerson noted, however, that there is no evidence that the Cumulative Counseling Summary is an accurate and complete record of everything that a counselor discusses with an inmate. Furthermore, there is nothing in the regulations that require an inmate to either inquire about properly submitted grievances or to immediately bring every concern to the attention of his counselor. Plaintiff testified that he placed the grievance on his cell door for delivery via institutional mail to Counselor Nippe, and Magistrate Judge Wilkerson found Plaintiff sincere in his statements of what occurred.

Because Plaintiff never received a response to his properly submitted grievance, Magistrate Judge Wilkerson concluded that the grievance process was unavailable to Plaintiff. Accordingly, Magistrate Judge Wilkerson recommended that this Court deny Defendant Shearing's Motion for Summary Judgment on the issue of exhaustion.

## DEFENDANT SHEARING'S OBJECTION

Defendant Shearing objected to the Report and Recommendation arguing that, while Magistrate Judge Wilkerson found Plaintiff credible in his assertion that he submitted his grievance regarding Defendant Shearing, the Court did not take into consideration the fact that Plaintiff's Cumulative Counseling Summary does not contain an entry for November 19, 2013, the date Plaintiff claims Counselor Nippe told him she received his grievance and forwarded it to health care.

Defendant Shearing provided an affidavit from Counselor Nippe, who was unable to appear at the *Pavey* hearing. In her affidavit, Counselor Nippe stated that she met with Plaintiff on October 12, 2013, and November 16, 2013, but he did not mention any issues with his medical care. Also, contrary to Plaintiff's allegations, she did not meet with him on November 19, 2013, nor did she discuss any grievance regarding Dr. Shearing with him. Counselor Nippe further provided the procedure for submitting grievances at Menard. Under that procedure, Counselor Nippe notes the date she receives a grievance in the Counselor's response section of the grievance form. After investigating the grieved matter, she enters a response and the response date. She then documents the grievance and her response in the inmate's Cumulative Counseling Summary. Finally, she returns the original grievance to the inmate.

According to Defendant Shearing, Counselor Nippe's affidavit calls Plaintiff's credibility into question. Not only does Plaintiff deny meeting with Counselor Nippe on October 12, 2013, and November 16, 2013—meetings that are well documented in his Cumulative Counseling Summary—he also claims he spoke with her regarding his

grievance on November 19, 2013. According to Counselor Nippe, that conversation never occurred.

## DISCUSSION

Where timely objections are filed, this Court must undertake a *de novo* review of the Report and Recommendation. 28 U.S.C. § 636(b)(1)(B), (C); FED. R. CIV. P. 72(b); SDIL-LR 73.1(b); *Harper v. City of Chicago Heights*, 824 F. Supp. 786, 788 (N.D. Ill. 1993); *see also Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). The Court may accept, reject, or modify the magistrate judge's recommended decision. *Harper*, 824 F. Supp. at 788. In making this determination, the Court must look at all of the evidence contained in the record and give fresh consideration to those issues to which specific objections have been made. *Id.*, *quoting* 12 Charles Alan Wright et al., *Federal Practice and Procedure* § 3076.8, at p. 55 (1st ed. 1973) (1992 Pocket Part).

Here, Defendant Shearing argues that, although the Court found Plaintiff credible when he testified that he submitted a grievance regarding Defendant Shearing on November 17, 2013, Plaintiff actually is *not* credible given the evidence presented in Counselor Nippe's affidavit. Yet, Defendant Shearing provides no evidence that Plaintiff did not put the grievance on his cell door. Defendant Shearing essentially asks the Court to make a credibility determination, *i.e.*, find that Plaintiff lied about submitting his grievance through institutional mail, because he maintains he spoke with his counselor on November 19, 2013, and she maintains that he did not. The Court declines to adopt that assessment.

At *Pavey* hearings, a court is permitted to make findings of fact and credibility assessments of witnesses. *See Pavey v. Conley*, 663 F.3d 899, 904 (7th Cir. 2011). Magistrate judges are in the best position to assess a witness's credibility because they have the

opportunity "to observe the verbal and nonverbal behavior of the witnesses . . . [including their] reactions and responses to the interrogatories, their facial expressions, attitudes, tone of voice, eye contact, posture and body movements." *Kraushaar v. Flanigan*, 45 F.3d 1040, 1052-53 (7th Cir. 1995). In this case, Magistrate Judge Wilkerson assessed the credibility of Plaintiff's statements and found them to be true. It is not the Court's role at this juncture to second-guess Magistrate Judge Wilkerson's credibility determinations. *Goffman v. Gross*, 59 F.3d 668, 671 (7th Cir. 1995) ("The district court is not required to conduct another hearing to review the magistrate judge's findings or credibility determinations").

## CONCLUSION

For these reasons, the Court **OVERRULES** Defendant's objection to the Report and Recommendation (Doc. 92), **ADOPTS** Magistrate Judge Wilkerson's Report and Recommendation (Doc. 89), and **DENIES** the motion for summary judgment on the issue of exhaustion filed by Defendant Dr. Robert Shearing (Doc. 57).

**IT IS SO ORDERED.**

**DATED:** September 28, 2016

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**